**Harvey CORBITT, Plaintiff,**

v.

**DIAMOND M. DRILLING CO., Defendant.**

**SHELL OIL COMPANY, Third-Party Plaintiff-Appellant,**

v.

**SLADCO, INC., Third-Party Defendant-Appellee.**

No. 80–3092.

United States Court of Appeals, Fifth Circuit. Unit A

Aug. 24, 1981.

▮

**13.** *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

James E. Blazek, Thomas G. O'Brien, New Orleans, La., for plaintiff.

McGlinchey, Stafford, Mintz & Hoffman, Peter L. Hilbert, Jr., John E. Galloway, New Orleans, La., for defendant.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS,* District Judge.

CHARLES CLARK, Circuit Judge:

The issue presented on this appeal is whether Shell Oil Company is entitled to receive indemnification under the terms of its contract with Sladco, Inc. The district court held that it was not and granted

* District Judge of the Western District of Texas, sitting by designation.

summary judgment to Sladco. We agree and affirm the district court.

## I.

Shell Oil Company (Shell) owned certain oil and gas leases covering water bottoms located in the Gulf of Mexico. On January 25, 1977, it entered into an "Offshore Drilling—Workover Contract" with Diamond M. Drilling Company (Diamond M.) under which Diamond M. agreed to furnish labor, materials, and equipment for drilling, completing, working over, or deepening wells on Shell's leaseholds. In addition to the various provisions governing the terms and conditions of performance, the Offshore Drilling—Workover Contract contained an indemnity clause. Under Article X of the contract, Shell agreed to indemnify Diamond M. against all claims brought by Shell's employees, agents, invitees, or subcontractors for personal injuries arising out of work performed by them. Diamond M. also assumed a similar, reciprocal liability under Article X to indemnify Shell for claims brought by its own employees, agent, or invitees.

Shell also hired Sladco, Inc. (Sladco) as an independent contractor. On November 21, 1975, Sladco executed a blanket "Purchase Order" under which Sladco agreed to furnish personnel, equipment, and supplies for casing services as required by Shell. This Purchase Order incorporates the indemnification provision which is in dispute here. In pertinent part, it reads as follows:

> ... Contractor [Sladco] shall indemnify Shell against all loss or damage arising out of the negligence, of Contractor or any sub-contractor and not within the Contractor's indemnity in the next sentence. Contractor shall indemnify and defend Shell Oil Company and its employees and agents against all claims, suits, liabilities and expenses on account of injury or death of persons (including employees of Shell or Contractor, and subcontractor and their employees) or damage of property arising out of or in connection with performance of this Order, and not caused solely by Shell's negli-

gence without any contributory negligence or fault of Contractor or any subcontractors.

This litigation stems from the injury of a Sladco employee who was working on one of Diamond M.'s drilling rigs. On April 13, 1977, Shell requested Sladco to send a casing crew to the DIAMOND M. RIG NO. 42 which was performing drilling services for Shell. The DIAMOND M. RIG NO. 42 is a submersible inland drilling barge, and on April 13 it was located at State Lease 1665, Eugene Island Block 18, Well Number 26, off the Louisiana coast. The Sladco crew comprised the plaintiff in this case, Harvey Corbitt, and five other employees. Corbitt allegedly sustained injuries to his spine when he slipped and fell on a mud stand while he was tightening a unibolt connection that secured the cement head and kelly hose on top of the oil well.

Corbitt then sued Diamond M. for negligence, claiming that Diamond M owned the nut and nonadjustable wrench he was using when he was injured. Corbitt contended that his fall was caused by the wrench slipping on the unibolt because the nut had become rounded off. Other witnesses confirmed his explanation for the accident, but others suggested that Corbitt could have merely lost his footing on the mud stand because it was covered with mud and very slippery.

Diamond M. filed a third-party action against Shell seeking indemnity under the terms of the Offshore Drilling—Workover Contract. Shell then brought its own third-party action against Sladco, asserting a right of indemnification under the terms of the Purchase Order. Diamond M. and Shell subsequently settled with Corbitt, and Sladco moved for summary judgment on Shell's third-party claim. The district court granted Sladco's motion and dismissed the action, concluding that "the language of the indemnity agreement does not require Sladco to indemnify Shell for Shell's contractual liability to Diamond M." Shell appeals from the grant of summary judgment.

## II.

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). On appeal Shell maintains that the district court improperly granted summary judgment to Sladco by implicitly resolving three disputed issues of fact: (1) whether federal maritime or Louisiana law controls, (2) whether Shell and Sladco intended the Purchase Order to give Shell a right of indemnification for its contractual liability to Diamond M., and (3) whether Corbitt's injury arose from Sladco's negligence. According to Shell, these were dispositive issues of fact which required the presentation of evidence at trial. Shell's position is without foundation, however, for the district court resolved each of these questions as a matter of law without relying upon any disputed issues of material fact.

Shell first contends that the district court should not have applied federal maritime law to construe the indemnity clause in the Shell-Sladco Purchase Order because a substantial issue of fact existed over whether Corbitt's primary duties as a casing hand on an offshore drilling rig located on inland waters bears a significant relationship to traditional maritime activities. Shell also suggests that Louisiana law should apply because DIAMOND M. RIG NO. 42 was an inland drilling barge located in Louisiana territorial waters. Shell's analysis borrows extensively from the familiar "status" and "situs" concepts for determining coverage by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq.

■ But Shell's approach to the federal-state choice-of-law problem is erroneous in light of settled precedent. The interpretation of an indemnity clause in a maritime contract is ordinarily governed by federal maritime law rather than by state law. *Navieros Oceanikos, S.A. v. S.T. Mobil Trader*, 554 F.2d 43, 47 (2d Cir. 1977); *Capozziello v. Brasileiro*, 443 F.2d 1155, 1157 (2d Cir. 1971); *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir. 1970). See *M.O.N.T. Boat Rental v. Union Oil Co.*, 613 F.2d 576, 579 n. 6 (5th Cir. 1980); *Halliburton v. Norton Drilling Co.*, 302 F.2d 431, 437 (5th Cir. 1962). Moreover, *Transcontinental Gas Pipe Line, supra*, and *Halliburton, supra*, established beyond cavil that the Shell-Sladco Purchase Order is a maritime contract to which federal law is applicable.[1] *Accord Tri-State Oil Tool Indus. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969) (federal maritime law of tort indemnity controls where accident occurs in navigable waters).

■ Shell next argues that the district court should not have granted summary judgment without considering extrinsic evidence of the parties' intentions when the Purchase Order was executed. However, the choice of federal maritime law over state law also disposes of this contention. Although Shell insists that under Louisiana law the intent of contracting parties may always be shown by extrinsic evidence, federal maritime law is different: a court may not look beyond the written language of the

---

1. Both cases involve events occurring in connection with offshore drilling in Louisiana territorial waters. *Transcontinental Gas Pipe Line* dealt with the distribution of liability between the drilling contractor and the lease operator for whom the drilling work was being performed when a drilling barge submerged and caused damage to a gas pipe line buried in the Eugene Island Area of the Gulf of Mexico. The court held that the indemnity clause in the contract between the driller and the lease operator was governed by federal maritime law. See 424 F.2d at 691.

Similarly, *Halliburton* involved an action for personal injuries by an employee of a drilling contractor engaged in drilling operations from a submersible drilling barge on Lake Barre in Terrebonne Parish, Louisiana. The injured employee sued the oil well service company that had run the cemented casing work on the well drilled by the contractor. The court held that federal maritime law controlled the oil well service company's third-party action against the drilling contractor seeking indemnity on theories of active-passive negligence and breach of an implied warranty of workmanlike performance. See 302 F.2d at 437.

document to determine the intent of the parties unless the disputed contract provision is ambiguous. *Hicks v. Ocean Drilling and Exploration Co.,* 512 F.2d 817, 825 (5th Cir. 1975). The district court, therefore, properly refused to consider parol evidence of the parties' intentions and focused solely on the unambiguous language of the Purchase Order.

Shell finally argues that summary judgment was inappropriate because there was a substantial conflict about the cause of Corbitt's injuries. Shell insists that Corbitt's injuries were caused either by his negligence alone or by the joint negligence of Corbitt and Sladco and that Sladco's promise to indemnify would cover either situation. Once again, however, the district court avoided any unresolved issues of fact by holding as a matter of law that the indemnity clause in the Purchase Order does not impose any obligation on Sladco to indemnify Shell for its own independent contractual liability to Diamond M. under Article X of the Offshore Drilling-Workover Contract. This conclusion was correct.

 A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms. *See, e. g., United States v. Seckinger,* 397 U.S. 203, 211–13, 90 S.Ct. 880, 885–86, 25 L.Ed.2d 224, 232–234 (1970); *Transcontinental Pipe Line Corp. v. Mobile Drilling Barge,* 424 F.2d at 691–92. A contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee. For the same reasons express notice is required where a party seeks to shift his contractual liability to indemnify a third party.

██ The Purchase Order, however, does not expressly provide that Sladco will indemnify Shell for Shell's contractual liability to third persons. The Sladco-Shell agreement simply provides for indemnity "against all claims, suits, liabilities and expenses *on account of personal injury . . .* arising out of or in connection with performance of this Order . . ." (emphasis supplied). But Shell's liability to Diamond M is not on account of personal injury. Rather, it is on account of its agreement to indemnify Diamond M under Article X of the Offshore Drilling—Workover Contract. Since the Purchase Order does not specifically provide that Sladco assumes claims arising from Shell's own separate contractual obligations, such indemnification is not required.

Nor can it be said that Shell's contractual duty to indemnify Diamond M. is the kind of liability which the parties to the Purchase Order intended to include within the scope of Sladco's duty to indemnify Shell. Apart from any contractual undertaking to the contrary, Sladco's exposure to liability for injuries sustained by its own employees would be limited by the relevant workers' compensation scheme. If Shell had intended that Sladco forego its limited liability for such injuries, Shell should have said so in clear, specific terms. In the absence of such explicit language, it is unreasonable to assume that Sladco intended to undertake such an unusual and surprising obligation.

The conclusion that the Purchase Order does not require Sladco to indemnify Shell for its contractual liability to Diamond M draws additional support from *Scherff v. Missouri-Kansas-Texas Railroad,* 449 F.2d 23 (5th Cir. 1971). There the Missouri-Kansas-Texas Railroad permitted the Northern Natural Gas Company to store 105 carloads of pipe in exchange for a rental fee and an indemnification agreement. Northern then

employed Shamrock Constructor's, Inc., to unload the pipe from the railroad cars and stack it, and Shamrock agreed to indemnify Northern from any and all claims for injuries to or the death of any person alleged to have been caused by or to have arisen out of any of the contracted work. Scherff was injured in the process of switching empty cars so that cars loaded with additional pipe could be placed for unloading. He recovered from his employer, the Railroad, under the Federal Employers' Liability Act, and the Railroad received indemnification from Northern. However, the court held that Northern was not entitled to indemnification from Shamrock for its contractual liability to the Railroad.

> Northern's liability to Railroad is contractual, not tortious. It is perfectly obvious that Shamrock and Northern did not intend, nor does the agreement provide, that Shamrock would indemnify Northern for any liability that might arise out of a contract entered into between Northern and other parties.

449 F.2d at 30.

The contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities. We hold only that it must clearly express such a purpose. In this case, there is nothing in the contractual language itself or in the realities of the situation in which the parties executed the Purchase Order which reflects any such intention.

Accordingly, because there were no genuine issues of material fact in dispute and because Sladco was entitled to judgment as a matter of law, the district court properly granted summary judgment in favor of Sladco.

AFFIRMED.