**CHEVRON U.S.A., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 100–88C.**

United States Claims Court.

April 4, 1990.

Paula L. Levitan, Washington, D.C., for plaintiff.

Elizabeth S. Woodruff, Washington, D.C., with whom was Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This matter is before the court on the parties' cross-motions for summary judgment pursuant to Rule fifty-six of the Rules of the United States Claims Court (RUSCC). The court shall grant a party's motion for summary judgment under RUSCC 56 when there are no issues of material fact in dispute and when the moving party is entitled to judgment as a matter of law. RUSCC 56(c). A genuine issue of material fact is present when the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if, according to the substantive law that governs, it could affect the outcome of the case. *Id.* The court, having considered the arguments presented in the parties' motions and at oral argument, finds this matter ripe for summary judgment.

### FACTS

On June 19, 1944, plaintiff's predecessor in interest, the Standard Oil Company of California (Standard), entered into a contract (the Contract) with the United States Department of Navy[1] to develop and operate certain lands known as the Naval Petroleum Reserve No. 1 (the Reserve). The Reserve, which consisted of 46,000 acres of land in Elk Hills, California, was created subject to preexisting private ownership of the land. Thus Standard owned approximately twenty percent of the Reserve and the Defendant owned approximately eighty percent of the Reserve. The Contract provided that the Reserve would be operated "for the production of oil, gas, natural gasoline and associated hydrocarbons."

The Contract further created a scheme of joint participation in the development and operation of the Reserve based on the percentage ownership of the contracting parties. The oil, gas and other hydrocarbons extracted from the Reserve were to be divided according to the parties' percentage ownership. That is, each party would be allocated oil, gas and other hydrocarbons in accordance with the relative volume of the oil and gas-producing formations underlying their respective lands, as determined

---

1. As of 1977, pursuant to a Department of Energy Organization Act, the administration of the Contract was transferred to the Department of Energy. Act of Aug. 4, 1977, Pub.L. No. 95–91, 91 Stat. 565.

from engineering studies. Thus, over the life of the Contract, each party would be allocated a volume of oil, gas and other hydrocarbons corresponding to the amount originally underlying their lands.

The Contract also provided that defendant would enjoy exclusive control over the development and operations of the Reserve. At defendant's option, the Reserve would be operated either by defendant itself or by another operator (the Unit Operator) of defendant's choosing. Prior to 1975, Standard acted as the Unit Operator of the Reserve. In 1975, defendant contracted with the Williams Brothers Engineering Company (WBEC) to perform the Unit Operator function.

Finally, the Contract provided that the costs, or unit expenses, were to be shared by the parties in accordance with their respective ownership interest. These costs included "[t]he costs of exploring, prospecting, developing and operating the reserve...." The Contract also required that each party "pay ... that proportion of the total costs ... with respect to each zone which the quantity of production currently received by [the individual party] from such zone ... bears to the total quantity of production currently received by both [parties] from such zone...." With respect to expenses not attributable to the production of specific zones, such as administrative and legal fees, plaintiff asserts, and defendant does not contest, that such expenses have been allocated among the various zones based on the percentage of total Reserve costs allocated to each zone during the prior fiscal quarter.

In September 1981, two employees of the Unit Operator, WBEC, were injured while working as gas plant compressor operators at the Reserve. These two employees, Messrs. Hester and Dornan, filed an action against plaintiff in the Superior Court of California seeking damages for their injuries. Following a jury trial in June 1986, a special verdict was returned in favor of plaintiffs Hester and Dornan. The jury found that Hester's and Dornan's injuries were caused by WBEC's negligent failure to protect against the risk of injury, that

defendant Chevron was not negligent, but that Chevron and the United States were joint venturers in the Reserve. Thus, under California's "peculiar risk" doctrine, Chevron was held vicariously liable to Hester and Dornan for $731,789.00. Judgment was entered against it accordingly. This judgment was upheld on appeal.

Plaintiffs Hester and Dornan also filed suit under the Federal Tort Claims Act against the United States in the United States District Court for the Eastern District of California. In that action, summary judgment was entered in favor of the defendant United States on March 16, 1988. The District Court held that the Federal Tort Claims Act did not waive defendant's sovereign immunity under the circumstances of that case.

## DISCUSSION

Plaintiff filed this action seeking damages for defendant's alleged breach of contract. In its instant motion, plaintiff argued that the Contract unambiguously required defendant to share in the legal fees and judgment incurred in the Hester/Dornan litigation. Such expenses, plaintiff asserted, are within the meaning of "operating expenses" of the Reserve, and are thus subject to the Contract's cost-sharing formula. Plaintiff argued, in the alternative, that the conduct of the parties in performing the Contract demonstrates that the Contract anticipates defendant's responsibility for sharing the cost of the judgment entered against plaintiff.

Defendant asserted that it is entitled to summary judgment because the Contract unambiguously distinguished operating costs from such expenses as judgments entered against only one of the owners, which it terms "owner's costs." Defendant contended that the expense of the Hester/Dornan judgment was not a cost of operating the plant; rather, it was a cost incurred purely by virtue of plaintiff's status as an owner of the Reserve. As such, the expense of the judgment is not subject to the Contract's cost-sharing formula.

The issue thus presented to the court in passing on the cross-motions for summary

judgment is whether the Contract must be construed as requiring defendant to share in the expense of a judgment entered against plaintiff when the underlying cause of the liability is the action of the Unit Operator in performing its duties operating the Reserve.

At the outset, the court notes that the issue presented is one that is appropriate for resolution on summary judgment. It is well-settled, and the parties do not dispute, that contract interpretation is a matter of law and thus appropriate for resolution on summary judgment. *See Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir.1985); *B.D. Click Co. v. United States*, 222 Ct.Cl. 290, 614 F.2d 748, 752 (1980); *Randallstown Plaza Assocs. v. United States*, 13 Cl.Ct. 703, 706 (1987). In construing the Contract, the court will look first to the plain meaning of the contractual language. *See Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 351 F.2d 972 (1965). Only where there is ambiguity will the court refer to factors such as the course of the parties' performance as an indication of the meaning of the contractual provisions. *Chris Berg, Inc. v. United States*, 197 Ct.Cl. 503, 455 F.2d 1037, 1044 (1972); *XXX Constr. Co. v. United States*, 16 Cl.Ct. 491, 495 (1989). In all cases, this court has stated that it will construe a contract so as to effectuate the intent of the parties. *Firestone Tire & Rubber Co. v. United States*, 195 Ct.Cl. 21, 444 F.2d 547, 551 (1971); *Tibshraeny Bros. Constr. Inc. v. United States*, 6 Cl.Ct. 463, 469 (1984).

The Contract itself is spartan in its description of the kinds of expenses that are to be shared by the parties. Section 6 of the Contract provides that "[the United States] and [Standard] shall each be obligated to bear its respective share of all costs expenses incurred or contracted for by [the United States] in the exploration, prospecting, development and operation of the Reserve as a unit under this contract." The critical reference is to the "costs incurred in ... operation" of the Reserve. Although such a sweeping provision might pose definitional problems in cases of unanticipated or unusual expenses, it presents no such difficulties here. The expenses in question here are reasonably anticipated in projects such as the parties here have undertaken. The parties' own course of performance, discussed below, demonstrates this. The parties certainly must have anticipated the risk of litigation expenses, including judgments, associated with the operation of a highly sophisticated oil and gas producing Reserve with some attendant exposure of danger to the workforce. The expenses of the Hester/Dornan litigation are the manifestation of this fully anticipated risk. The expenses plaintiff incurred in the Hester/Dornan litigation are unambiguously attributable to the operation of the plant. Although plaintiff's liability attaches by virtue of its status as a joint venturer in the project, that fact does not change the fact that plaintiff's liability derives from the conduct of the Unit Operator in "operating the Reserve."

Defendant's attempt to distinguish the Hester/Dornan litigation expenses from operating costs must fail. Defendant asserted a distinction between "operating costs" and costs "arising out of" the operation of the Reserve, including such expenses as the Hester/Dornan judgment. Such a distinction is nowhere to be found in the Contract. Indeed, the Contract suggests just the opposite. Section 6 of the Contract obligates the parties to share all "operating costs."

The course of the parties performance of the Contract provides additional support for the conclusion that the Hester/Dornan litigation expenses and judgment are in fact operating expenses. Plaintiff noted, and defendant did not dispute, eighteen cases since 1976 where legal fees, judgments and/or settlements arising out of the conduct of the Unit Operator were passed through to the parties as operating costs. The court may rely on such repeated conduct in interpreting the meaning of the Contract. *Standard Oil Co. of Cal. v. United States*, 231 Ct.Cl. 112, 685 F.2d 1337, 1345 (1982).

Defendant also asserted a distinction between litigation expenses generally and the Hester/Dornan litigation expenses in par-

ticular. Defendant suggested that the Hester/Dornan litigation expenses are "owner's costs" rather than operating costs because they attach, under California's peculiar risk doctrine, solely by virtue of plaintiff's status as an owner. This artificial distinction missed the real basis for including these expenses in operating costs: but for the activity of the Unit Operator in operating the plant, the costs would not have attached at all. The court cannot agree with defendant that the contractual obligation to share the expense of litigation fees and judgments depends on who is named as the defendant in a suit. Instead, the proper basis for distinguishing owner's costs from operating costs must be the activity that gave rise to the expense. Where, as here, that activity is the Unit Operator's conduct in operating the Reserve, the resulting expenses are operating expenses. Moreover, defendant's distinction was contrary to the plain language of the Contract, which imposes the cost sharing formula on expenses "incurred by the [United States] *and/or* Standard." (emphasis added). Thus, the Contract anticipates, contrary to defendant's assertion, that some costs incurred by one of the parties alone may still be shared as unit expenses. The expenses of the Hester/Dornan litigation are, to the court, just such a cost.

Defendant urged that the court should not interpret the Contract to require the United States to indemnify plaintiff for the negligence of the Unit Operator, citing *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329 (5th Cir. Unit A Aug.1981). The court need not consider the force of *Corbitt* because its holding is inapposite to the facts of this matter. The court in *Corbitt* required that an agreement for the United States to indemnify a contracting party must be "reasonably inferred" from the contract.[2] But this is not an action for indemnification. Rather, plaintiff stated a claim for breach of a contractual obligation to share in operating costs, including legal fees and judgments.

Similarly, Defendant's assertion that plaintiff's construction of the Contract would violate the Anti–Deficiency Act (ADA), 31 U.S.C. § 1341(a)(1) (1982), was misplaced. The ADA prohibits contractually obligating the United States to pay money in advance of an appropriation "unless authorized by law." *Id.* § 1341(a)(1)(B). The statutory authority under which defendant originally entered the Contract, Act of June 17, 1944, Pub.L. No. 78–343, 58 Stat. 280 (amending Act of June 4, 1920, Pub.L. No. 66–243, 41 Stat. 813), makes the payment of operational expenses "authorized by law." There is, therefore, no basis under the present circumstances for finding either an express or implied violation of the ADA.

Defendant also suggested a distinction between certain investigative costs of the Hester/Dornan litigation, which were included as operating costs, and the subsequent Hester/Dornan litigation fees and judgment. The distinction, defendant argued, is that the former costs are directly attributable to the operation of the plant, whereas the latter costs are not. This bootstrap argument must also fail. Again, defendant's distinction ignored the critical basis for identifying a unit expense: the activity underlying the expense. In this case, the activity underlying the expense was the operation of the Reserve.

## CONCLUSION

Based on the undisputed facts of this case, the court finds that plaintiff is entitled to judgment on its claim for relief as a matter of law. The quantum of damages, however, is still a matter in dispute. Defendant's Answer to Plaintiff's First Amended Complaint did not admit to the quantum of damages alleged at paragraph twenty-two of Plaintiff's First Amended Complaint. The parties are ordered to confer on the question of the quantum of damages and, if an agreement is reached, file a stipulation as to their agreement within twenty (20) days of the date of this Order. In the event that the parties are

---

**2.** The court notes, without deciding, that even if this were an action for indemnity controlled by *Corbitt,* plaintiff's claim might very well meet the *Corbitt* requirements.

**90**

unable to agree on the quantum of damages within twenty (20) days, they are ordered to move for a status conference to schedule a hearing on this issue. Based on the foregoing, plaintiff's motion for summary judgment in this matter is granted in part.

IT IS SO ORDERED.