**EEX CORPORATION, Plaintiff,**

v.

**ABB VETCO GRAY, INC., Defendant.**

**No. CIV. A. H–00–4468.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 9, 2001.

748

Thomas W. Paterson, Houston, TX, for Plaintiff.

Ronald L. White, Houston, TX, for Defendant.

### Opinion on Remand

HUGHES, District Judge.

### 1. *Introduction.*

An oil company rented a drilling tool that later broke. The oil company sued the tool supplier in a Texas court for breach of warranty, breach of contract, and products liability. The supplier removed the case, asserting jurisdiction because the tool broke when being used on land under federal jurisdiction—the outer continental shelf. The oil company has asked this court to remand the case, saying that its claims are maritime in nature and not subject to removal.

### 2. *Facts.*

EEX Corporation is an oil and gas company whose activities include drilling on the outer continental shelf. ABB Vetco Gray, Inc., is an oil tool company suppyling products and services for drilling and production. Both parties have their principal places of business in Houston.

Two years ago, Vetco agreed to supply manpower and other services for EEX's drilling operation off the coast of Louisiana. Vetco also won a bid to furnish for–hire drilling equipment to EEX; among the items was a pressure–assist drill pipe running tool. EEX took the tool to Garden Banks Block 386, where its offshore drilling vessel was located above the outer continental shelf in the Gulf of Mexico. The tool broke when EEX was using it to run casing. Vetco replaced it, but EEX incurred expenses for delay until the new tool could be substituted.

EEX sued Vetco in the 334th District in Harris County. Vetco removed under the Outer Continental Shelf Lands Act. *See* 43 U.S.C. § 1331. EEX has moved to remand for lack of jurisdiction.

### 3. *The Outer Continental Shelf Lands Act.*

Federal courts have original jurisdiction over activities conducted on the outer continental shelf that involve the exploration, development, or production of subsoil and seabed minerals on the shelf. 43 U.S.C. § 1331, 1349(b)(1)(A). Drilling is a form of exploration. § 1331(k)(*l*); *see Recar v. CNG Producing Co.,* 853 F.2d 367 (5th Cir.1988); *see also Hufnagel v. Omega Serv. Indus. Inc.,* 182 F.3d 340, 350 (5th Cir.1999) (holding the shelf act conferred jurisdiction over a personal injury suit because the worker was hired to drill for shelf minerals, even though he was on the platform when he got hurt). Congress amended the shelf act in 1978 to encompass vessels attached to the sea floor. § 1331(a)(1).

█ If lightning strikes a Morocco-bound cargo ship sailing over the shelf, or if a survey ship smashes against a rock jutting out from the shelf, the act does not apply because the ships were merely traveling over the shelf, not conducting activities on it. Here, EEX's injuries arose because of its barge's operations on the shelf. In the summer of 1999, EEX and Vetco discussed the operation on Garden Banks Block 386 and what tools and manpower EEX needed to drill there; Vetco leased EEX a tool for that specific purpose—to run casing into a well intended to divest the shelf of its natural resources. Both parties knew when, where, and how the tool was to be used before its ultimate return to Vetco. Had EEX not been drilling on the shelf, there would have been no bidding, no contract, no well, no casing, no tool, no break, and no lawsuit. The predicate for this suit arose under the shelf act. When EEX chose to drill on the outer

Continental shelf, it voluntarily conducted an activity on it and subjected itself to federal jurisdiction. EEX cannot complain about that now.

EEX does not argue that the site of the tool's failure—the outer Continental shelf—is wholly irrelevant to the suit and that the case should be remanded as a simple common law contracts dispute. Quite the opposite in fact; EEX admits that it could have voluntarily sued in federal court based on the shelf act, but insists that Vetco cannot remove the suit because the Constitution protects a plaintiff's choice of court.

### 4. *Savings to Suitors.*

■ The Constitution vests federal courts with jurisdiction over admiralty and maritime cases. CONST. art. III, § 2. In 1789, Congress allowed maritime claims in state court and allowed common-law remedies to plaintiffs in both court systems. The Judiciary Act, § 9, now codified as 28 U.S.C. § 1333(1). The statute has been revised over the ensuing two centuries, but its substance remains unchanged. *See generally Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 121 S.Ct. 993, 998–99, 148 L.Ed.2d 931 (2001). It says that district courts have exclusive jurisdiction over maritime disputes "saving to suitors… the right of a common law remedy, where the common law is competent to give it."

■ EEX interprets this language as giving plaintiffs the sole option in selecting a venue. EEX is wrong. The clause preserves *remedies* to plaintiffs; it does not affect a defendant's opportunity to remove a case. *See Poirrier v. Nicklos Drilling Co.,* 648 F.2d 1063, 1066 (5th Cir.1981)(finding the suitors clause does not guarantee plaintiffs a non-federal forum.)

### 5. *Removal Jurisdiction.*

■ If a case arises under the Constitution or federal law, a defendant may remove it if unless the federal statute excludes removal. 28 U.S.C. § 1441(a). CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, JURISDICTION AND RELATED MATTERS, § 3721 (1998). Unlike the act covering personal injuries to seamen, the shelf act makes no reservation. This case is about an unhappy drilling company who leased a bad tool—a contracts issue, not a personal injury one.

Both parties agree that this court has original jurisdiction based on the shelf act. If it has original jurisdiction, it has removal jurisdiction. The confusion is due in part to the law about what to do when maritime claims overlap with those arising under the shelf act. *See Tennessee Gas Pipeline v. Houston Casualty Ins. Co.,* 87 F.3d 150, 153 (5th Cir.1996). Courts have long debated the question of whether liabilities arising from offshore drilling explorations are subject to federal, maritime, or state law. The answer is sketchy, causing wholly unproductive uncertainty and its related costs like unnecessary motions and wrong decisions.

### 6. *Maritime Claims.*

What constitutes a maritime contract cannot be measured authoritatively. The best the Supreme Court has done was to say a contract is maritime if it had a "genuinely salty flavor." *Kossick v. United Fruit Co.,* 365 U.S. 731, 742, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *see also Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)(requiring that the injury bore a significant relationship to traditional maritime activity.) To gauge NaCl content, courts examine cases on a fact-by-fact basis. *See Dupre v. Penrod Drilling Corp.,*

993 F.2d 474, 477 (5th Cir.1993); *Davis & Sons, Inc. v. Gulf Oil Corp.,* 919 F.2d 313, 315 (5th Cir.1990).

■ EEX says that its claims are maritime, and there is some evidence of this. Vetco agreed to furnish EEX with equipment and manpower for casing a well on the outer continental shelf. *See Demette v. Falcon Drilling Co., Inc.,* 253 F.3d 840, 848 (5th Cir.2001); *see also Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332 (5th Cir.1981)(finding contracts for casing services performed on inland drilling barges are maritime). The pressure tool could be used effectively only off-shore, and the base of the drilling operation was a vessel.

■■ EEX's arguments, however, are not compelling. That the base of the drilling operation is a ship rather than fixed platform does not decide the matter. *See Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393 (5th Cir.1991); *but see Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1086 (5th Cir.1990)(finding contracts for offshore drilling involving a vessel are maritime in nature). Exploring the shelf and building pipelines on it are not maritime activities. *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 424, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985) (holding employment is maritime only if it involves the loading or construction of ships). Under the shelf act, a vessel ceases to be a vessel the moment it attaches itself to the shelf; it has become a tiny federal enclave not governed by international admiralty law. *See Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969)(9–0 decision); *Demette v. Falcon Drilling Co., Inc.,* at 848 (Moss, J., dissenting). The tool had nothing to do with the operation of the vessel; Vetco supplied a temporary crew for that operation. A tool itself is not a maritime element, like an anchor. EEX bases its suit on the contract for the tool, citing the warranty clause. A contract to catch tuna is inherently salty; a contract to furnish a running tool is not. The one tort claim pleaded—products liability—is premised on the manufacture and design of the tool, not the use of it. These claims are not maritime.

7. *Surrogate Law.*

■ The shelf act is a federal law. When claims are not expressly covered by federal law, the statute incorporates the laws of adjacent states as surrogate federal law as long as they are consistent with other federal law. *See* 43 U.S.C. § 1333(a)(2)(A). The default rule in shelf-act cases is not maritime law. *See Rodrigue* at 1837.

Although the shelf act applies state laws, it is a federal statute creating remedies that were non-existent before the assertion of jurisdiction—in the diplomatic sense—by the United States. A bill passed concurrently by the House and Senate and signed by the President creates a "federal question"—in the constitutional sense—regardless of its borrowing substance from the states.

Louisiana is the closest state to Garden Banks Block 386, and its laws would normally apply. The choice of law clause in the service agreement dictates maritime and Texas law, but as the parties dispute the validity of their contract, the court will defer selecting the law.

8. *Conclusion.*

This is a non-maritime claim arising under the shelf act, requiring that the motion to remand be denied.

Order Denying Remand

EEX's motion to remand is denied.