**In the Matter of the Complaint of BOSKALIS WESTMINSTER INTERNATIONAL B.V., Boskalis Westminster St. Lucia, Ltd., and Boskalis Westminster Middle East, Ltd., as owners, operators, managers, owners pro hac vice, and/or bareboat charterers of the unnamed tow of the M/V Betty, for Exoneration from or Limitation of Liability.**

Case No. 11–cv–20379.

United States District Court, S.D. Florida.

March 13, 2012.

Guillermo Luis Dominguez, Fowler Rodriguez Valdes–Fauli, Maria Isabel Hoelle,

**1240**

Coral Gables, FL, Alanson Trigg Chenault, Michael Harowski, Fowler Rodriguez Valdes–Fauli, New Orleans, LA, Roger A. Vaughan, Jr., Wagner Vaughan McLaughlin & Brennan, Jonah Levine, Robert B. Birthisel, Jules Victor Massee, Michael Joseph Bradford, Tampa, FL, Michael Charles Black, Cassidy & Black, P.A., Matthew Brooks Sullivan, Miami, FL, for Boskalis Westminster International B.V., Boskalis Westminster St. Lucia, Ltd., and Boskalis Westminster Middle East, Ltd.

### ORDER ON SUMMARY JUDGMENT

KATHLEEN M. WILLIAMS, District Judge.

THIS MATTER is before the Court on Limitation Plaintiffs'[1] Motion for Summary Judgment [D.E. 53] and Claimants Island Maritime Services, Inc. ("Island Maritime") and Edward K. Hansen's ("Hansen" and together with Island Maritime, "Claimants") Cross Motion for Summary Judgment [D.E. 65]. The Court held oral argument on the Motions on February 29, 2012. For the reasons set out below and discussed at the hearing, Boskalis's Motion is GRANTED and Claimants' Motion is DENIED.

### I. Background

Boskalis and Island Maritime entered into a towage contract on January 12, 2010.[2] Towhire International Ocean Towage Agreement (the "Agreement") [D.E. 53–1]. According to the Agreement, Island Maritime's tug BETTY, under the direction of Captain Edward Hansen, was to tow dredge pipe and pontoons (the "tow") from Nassau, Bahamas to Falmouth, Jamaica. Id. Both Parties ac-

knowledge that the Agreement is a valid contract. Claimants' Answer ¶ 19; Boskalis's Mot. at 5. The Agreement contains a provision that allocates risk between the tow and the tug, as described in more detail below. Agreement ¶ 18. Pursuant to the terms of the Agreement, Boskalis obtained a Towage Approval Certificate, which purportedly certified the seaworthiness of the tow and its fitness for the journey. Towage Approval Certificate, [D.E. 78–10].

The voyage began as planned on January 19, 2010. Aff. of Edward Hansen ¶ 7. On January 23, 2010, the captain of the BETTY claims the tow began to sink. Id. ¶ 12. The BETTY was pulled over on her side. Id. ¶ 13. Captain Hansen states, and Boskalis disputes, that Boskalis insisted that the journey continue. Id. ¶ 19. Claimants argue, and Boskalis disputes, that the loss was caused because the tow was unseaworthy. On January 25, 2010, the BETTY and the tow both sank. Id. ¶¶ 20–23. Neither was recovered. Id. Island Maritime claims that the tow sank during calm conditions; Boskalis asserts that the seas were rough.

Boskalis filed their Complaint for Exoneration from or Limitation of Liability with this Court on February 3, 2011. [D.E. 1]. The Court issued a Notice to Claimants that Boskalis had filed its Complaint and requiring any person with a claim arising from the sinking of the tow of the BETTY to file a claim with the Court by March 25, 2011. [D.E. 23]. Albert Hansen, the estate of Bobby Ray Sprott, Island Maritime, Edward Hansen and Total Ventures, LLC filed claims. [D.E.s 25, 26, 26, 34].

---

**1.** Limitation Plaintiffs consist of Boskalis Westminster International B.V., Boskalis Westminster St. Lucia, Ltd., and Boskalis Westminster Middle East, Ltd. Such entities will be referred to collectively as "Boskalis."

**2.** All facts are undisputed unless otherwise noted.

Albert Hansen, one of the BETTY's crewmembers, injured his ankle during the sinking. His claim has been settled. [D.E. 44]. Another BETTY crewmember, Bobby Ray Sprott, was missing following the sinking and is presumed dead. The claim of his estate against Boskalis and Island Maritime has settled. [D.E. 39]. Third Party Total Ventures has filed a claim against Island Maritime and Boskalis, claiming that its fuel oil was onboard the BETTY when she sank and was lost. [D.E. 34]. Island Maritime has made claims against Boskalis for damages arising from the loss of the BETTY and for indemnification for the claims it paid to crewmembers. [D.E. 27]. · Consistent with the Agreement's risk allocation provision, Boskalis has not asserted a claim against Island Maritime for the loss of the tow. Boskalis Mot. at 4.

Island Maritime claims that the indemnification provision—that is, the allocation of risk provision—is contrary to U.S. public policy and should be stricken from the Agreement. Island Maritime also claims that Boskalis's tow was unseaworthy, and thus the indemnification provision in the Agreement should not apply. Boskalis argues that the provision is clear and unambiguous and should be enforced to absolve Boskalis of liability for the tug, her crew and the fuel oil onboard the BETTY.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or others materials...." Fed.R.Civ.P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir.2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## III.  Analysis

### A.  Towage Contract Language

The indemnification provision of the towage contract states that the Tugowner (Island Maritime) will indemnify the Hirer (Boskalis) "in respect of any liability adjudged due or claim reasonably compromised arising out of injury or death occurring during the towage or other service hereunder to any of the following persons ... the Master and members of the crew of the Tug and any other servant or agent of the Tugowner." Agreement ¶ 18(1)(a)(1). A corresponding provision requires the Hirer (Boskalis) to indemnify the Tugowner (Island Maritime) for any liability arising with regard to (among others) the Master and crew of the tow. *Id.* ¶ 18(1)(b)(i). The second half of the in-

demnification provision sets out a list of liabilities that

> shall be for the sole account of the Tugowner without any recourse to the Hirer, his servants, or agents, whether or not the same is due to breach of contract, negligence or any other fault on the part of the Hirer, servants or agents:
>
> > (i) loss or damage of whatsoever nature, howsoever caused to or sustained by the Tug or any property on board the tug;
> >
> > (ii) loss or damage of whatsoever nature caused to or suffered by third parties or their property by reason of contact with the Tug or obstruction created by the presence of the Tug;
> >
> > (iii) loss or damage of whatsoever nature suffered by the Tugowner or by third parties in consequence of the loss or damage referred to in (i) and (ii) above;
> >
> > (iv) any liability in respect of wreck removal. . . .
>
> The Tugowner will indemnify the Hirer in respect of any liability adjudged due a third party or any claim by a third party reasonably compromised arising out of such loss or damage. The Tugowner shall not in any circumstances be liable for any loss or damage suffered by the Hirer or caused to or sustained by the Tow in consequence of loss or damage howsoever caused to or sustained by the Tug or any property on board the Tug. *Id.* ¶ 18(2)(a).

An identical provision applies to the Hirer (Boskalis), requiring the Hirer to indemnify the Tugowner for any of the above listed damage occurring to the tow. *Id.* ¶ 18(2)(b).

The Agreement also contemplates the seaworthiness of the tug and tow. As to the tow, the Hirer must "exercise due diligence to ensure that the Tow shall, at the commencement of the towage, be in all respects fit to be towed from the place of departure to the place of destination." *Id.* ¶ 12(a). The tow must be properly outfitted and the Hirer must provide to the tug an "unconditional certificate of tow-worthiness for the Tow issued by a recognized firm of Marine Surveyors or Survey Organization. . . ." *Id.* ¶ 12(b)-(c). The Agreement also dictates that "no inspection of the Tow by the Tugowner shall constitute approval of the Tow's condition or be deemed a waiver of the foregoing undertakings given by Hirer." *Id.* ¶ 12(d). For its part, the Tugowner is required to "exercise due diligence to tender the Tug at the place of departure in a seaworthy condition and in all respects ready to perform the towage, but the Tugowner gives no other warranties, express or implied." *Id.* ¶ 13.

## B. Public Policy

■ Island Maritime urges this Court to find that the indemnification provisions in the Agreement are contrary to public policy under the Supreme Court's ruling in *Bisso v. Inland Waterways Corporation*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). In *Bisso*, the Supreme Court held that contracts releasing towers from all liability for their negligence were invalid. *Id.* at 90, 75 S.Ct. 629. The Court gave two main reasons for this rule: "(1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have the power to drive hard bargains." *Id.* at 91, 75 S.Ct. 629. When discussing the second reason, the Court noted the "monopoly potential" of the tug business. *Id.* at 92, 75 S.Ct. 629. Island Maritime urges this Court to apply *Bisso* and find the indemnification clauses unenforceable. Island Maritime argues that the indemnification

provisions in the Agreement absolve Boskalis of all liability and provide no deterrent to negligence.

■ According to the Eleventh Circuit, there is a three part test for determining whether a limitation of liability clause is enforceable in a maritime contract. First, the clause must clearly state the parties' intentions. Second, the clause may not absolve the party of all liability and the liability risk must still provide a deterrent to negligence. Third, the parties must have relatively equal bargaining power. *Diesel "Repower," Inc. v. Islander Invs. Ltd.*, 271 F.3d 1318, 1324 (11th Cir.2001); *Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II*, 329 F.3d 809 (11th Cir. 2003) (citing *Diesel "Repower"*). While the facts in *Diesel "Repower"* did not arise in a tug/tow context, the Eleventh Circuit relied on the holding of *Bisso* to formulate its test in *Diesel "Repower." See id.*

■ Applying *Diesel "Repower,"* the Court finds that the limitation of liability clause in the Agreement meets the Eleventh Circuit's three part test. First, the allocation of risk between the Parties is clear. Boskalis was responsible for any damage to the tow or her crew, or for any damage that the tow caused. Island Maritime was responsible for any damage to the tug or her crew, and for any damage the tug caused. Island Maritime's contention that the provisions are unclear is unconvincing. Under federal maritime law, a court should not look beyond the written words of a contract to determine the intent of the parties unless the provision is ambiguous. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332–33 (5th Cir.1981). Island Maritime argues that the provision requiring Island Maritime to cover "any liability" relating to the tug, her crew, or the property onboard the BETTY cannot require Island Maritime to cover liability arising from Boskalis's negligence. In

support of this provision, Island Maritime points to *Corbitt*, where the Fifth Circuit held that "a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms." *Id.* at 333. Here, the contract is clear under the plain language of the contract that the indemnification provisions apply *regardless of cause*. In looking at similar indemnification provisions, courts have found that phrases like "any liability" or "all liabilities" are sufficient to cover negligence. *See Lopez v. Louro*, 2002 AMC 2026 (S.D.N.Y.2002) (applying Maryland law, which like federal maritime law, requires an explicit provision to construe an indemnity provision to include negligence); *Nature Conservancy v. Wilder Corp.*, 2008 WL 5244783, 2008 U.S. Dist. LEXIS 101722 (C.D.Ill.2008). *Corbitt* also dealt with third party contractual liability, and not liability between two contracting parties, as is the case here. Plaintiff's argument is unavailing. Here, negligence "reasonably appear[ed] to have been within the contemplation of the parties" in drafting the contract. *Corbitt*, 654 F.2d at 333.

■ Second, these responsibilities were allocated regardless of any fault or outside circumstance. Consistent with the dictates of *Diesel "Repower"* the clauses do not absolve the Parties of all liability, providing a deterrent to negligence for both. Both Parties were aware that under the contract they retained liability for their own vessel; thus, they each had an incentive to ensure that their vessel was sound and seaworthy. Here, Boskalis has borne the risk and liability of losing the tow. In their surreply, invited by the Court at oral argument, Claimants argue that such liability was insufficient to deter Boskalis's negligence. [D.E. 89]. The Court disagrees. While in this instance the tow was

unmanned, Boskalis acknowledged at the hearing that under the Agreement's allocation, it would have been responsible for any crew on the tow and any other damage to the tow or property on the tow. Additionally, Boskalis had a clear incentive to have its product delivered in a safe manner and workable condition; otherwise, there would have been no reason for Boskalis to enter into a towage contract to have the goods transported.

■ Third, as the Court pointed out in *Chevron* (discussed below), the fear of coercion that the Supreme Court faced in *Bisso* is not present. The indemnification provisions are reciprocal, and not a one-sided attempt by a tug to preclude all liability. In addition, as in *Chevron*, the tow here is seeking to avoid the liability rather than the tug, which is often the party with superior bargaining power. The provision is not void as contrary to public policy. Although Island Maritime asserts that the "knock for knock" allocation of liability is "inequit[able]," Claimants' Response at 9, their contention is not compelling. As discussed at the hearing, Island Maritime is a capable business party who was not coerced into signing this contract. The Parties do not dispute that the contract was negotiated, as indicated by the provisions that were taken out or altered. Agreement, [D.E. 53–1]. Island

Maritime was fully aware of its liabilities at the signing of the contract—they were clearly spelled out in the contract—and had the opportunity to insure itself accordingly to protect against any potential liabilities. Island Maritime glosses over the fact that Boskalis was not protected from the liability caused by the sinking of the tow. As a result, the indemnification clause is enforceable from a public policy standpoint.

While there are no binding cases that have addressed the specific form contract at issue here, courts in the Fifth Circuit have examined the applicability of *Bisso* to contracts similar to the Agreement. In *International Shipbreaking Limited LLC v. L.C. Smith,* the Fifth Circuit examined an identical agreement (the International Towcon Agreement) and analyzed whether the Towcon Agreement contained a warranty of workmanlike service.[3] *Int'l Shipbreaking Ltd. LLC v. L.C. Smith,* 44 Fed. Appx. 653, 2002 WL 1397097 (5th Cir.2002) (unpublished).[4] The plaintiff in the case argued that such a warranty should be applied because the risk allocation and indemnification provision was against public policy under *Bisso.* The Fifth Circuit disagreed: "[the Parties], both commercial entities, were free to allocate contract risks between themselves and to *disclaim implied warranties.*" *Id.* at *4 (emphasis added). The Court reasoned that the con-

---

3. The Court notes that counsel for the Claimants analogized the warranty for workmanlike service to the warranty of seaworthiness at the oral argument on the Motions, though he attempts to distinguish them in his brief.

4. Counsel for Claimants urges the Court to follow *A.L. Mechling Barge Lines, Inc. v. Derby Co.,* 399 F.2d 304 (5th Cir.1968) rather than *International Shipbreaking.* In support of this request, Claimants argue (1) that *International Shipbreaking* is wrongly decided, and (2) that *International Shipbreaking* is not binding on this Court whereas *A.L. Mechling* is. While *International Shipbreaking* is not bind-

ing on this Court because it is an unpublished circuit opinion and it was issued after 1981 (*see Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)), its reasoning is instructive. Unlike *A.L. Mechling, International Shipbreaking* deals with the Towcon Contract and its relationship to *Bisso* (and is one of the only United States cases that does so). *A.L. Mechling* simply reiterates that an implied warranty of seaworthiness exists and is applicable unless waived by "plainly unambiguous language." *Id.* at 305. As discussed below with *Corbitt,* the Court finds such unambiguous language here.

cerns of *Bisso* were not applicable in the Towcon contract, primarily because the provision does not shelter either of the parties from all liability. With the identical provisions allocating risk to both parties depending on who owned the vessel, each party retained "substantial exposure to liability," which acted as a deterrent to negligence. *Id.* Additionally, the fear of a monopoly in *Bisso* was lessened because both parties were commercial entities and both parties retained some degree of risk.

Likewise, in *Chevron U.S.A., Inc. v. Progress Marine, Inc.*, the Eastern District of Louisiana differentiated another limitation of liability clause from the clause at issue in *Bisso*. 1980 A.M.C. 1637 (E.D.La.1979). In *Chevron*, a tow was seeking to escape liability under a limitation of liability clause. The Court found that the "situation ... [was] the exact opposite of that with which the *Bisso* court was dealing. In *Bisso*, the tow needed the tugboat to tow it and the tugboat was using the tow's desperate need for towage services as leverage to exonerate itself from all potential liability.... [This scenario] does not amount to the sort of coercion with the *Bisso* court sought to prevent." *Id.* at 4.

The Court is also persuaded by the rationale articulated in English cases that have addressed the Agreement in relation to negligence and seaworthiness. Island Maritime argues that the cases contravene the *Bisso* rule and cannot be considered, but as described above, the Court does not agree that these provisions violate *Bisso* or *Diesel "Repower."* Island Maritime also asserts that the Court cannot consider the cases because the Agreement is to be governed under U.S. law and not English law. The Court agrees that the Agreement is governed under U.S. law, and has relied upon the holdings of U.S. precedent in reaching its conclusion. However, the Court also notes that the Supreme Court has counseled courts to endeavor to preserve uniformity between federal maritime law and English maritime law, though United States courts are not bound by English decisions. *Standard Oil Co. v. United States*, 340 U.S. 54, 59, 71 S.Ct. 135, 95 L.Ed. 68 (1950). Thus, the Court "accord[s] respect" (*id.*) to the analysis of the English courts regarding similar contracts and finds it resonates here: "[the indemnification provision] is a mutual exemption clause and ... its commercial purpose was to allocate the risk of specified types of loss and damage between the parties in a straightforward and clear manner. Risk and responsibility were divided on a no-fault basis. It makes clear who is to insure what.... The Clause should be construed in a manner which gives effect to that commercial purpose." *A Turtle Offshore SA v. Superior Trading Inc.*, [2008] EWHC 3034 (Admlty), 2 All ER (Comm) 624 at 16. Though "crude," the Agreement's provisions are a "workable allocation of risk and responsibility." *Smit v. Mobius*, [2001] 2 All ER (Comm) 265 at 19.

### C. Seaworthiness

Claimants argue that the tow sank during calm conditions, and thus is presumed to be unseaworthy. Island Maritime argues that there is an implied warranty and duty of seaworthiness in every marine contract, and that seaworthiness is a condition precedent to enforcement of the indemnification provisions. Claimants' Mot. at 7–12. Seaworthiness is defined as a vessel "being sufficiently staunch to withstand the pressures that ordinarily accompany the intended voyage," *King Fisher Marine Serv. Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1183 (5th Cir.1984), and is determined through a shifting of the burden of proof. When a tow "sinks in calm waters for no immediately ascertainable

cause ... in the absence of proof that the barge was improperly handled, the vessel's sinking is presumed to be a direct result of her unseaworthiness." *Id.* at 1184 (quoting *Consolidated Grain & Barge Co. v. Marcona Conveyor Corp.,* 716 F.2d 1077, 1081 (5th Cir.1983)). If, however, the tug knew of the condition of unseaworthiness and failed to exercise reasonable care under the circumstances, then the tug cannot disclaim liability. *Id.* Courts have found that there is an "implied warranty of seaworthiness" in towage contracts, and that absent "an express, plain, unequivocal waiver of seaworthiness, [parties] cannot be relieved of full liability for all loss occasioned by the unseaworthiness of [their vessels]." *Derby Co. v. A.L. Mechling Barge Lines, Inc.,* 258 F.Supp. 206, 211 (E.D.La.1966) *(aff'd by A.L. Mechling Barge Lines, Inc. v. Derby Co.,* 399 F.2d 304 (5th Cir.1968)).

■ A determination of whether a vehicle is seaworthy is factual issue, and the evidence in the record as to that issue is scant. Claimants argue persuasively that a grant of summary judgment on the basis that the tow was seaworthy would be inappropriate; there is a significant factual dispute as to the weather conditions at the time of the sinking and the propriety of the Captain's actions after the initial trouble with the tug. The issue before the Court at this juncture therefore is not whether the tow was seaworthy, but whether an alleged breach of the warranty would negate the indemnification provisions.

Pursuant to the Fifth Circuit's decision in *A.L. Mechling* and under the terms of the Agreement, there was clearly a warranty of seaworthiness between the Parties. Agreement ¶ 12. The sole question, therefore, is whether a breach of the seaworthiness provision in the Agreement would negate the indemnification provisions. Boskalis asserts that, applying the language of the contract, the contract is clear that Island Maritime is responsible for all liability arising from the sinking of the tug, even if the damage is due to Boskalis's negligence or the tow's unseaworthiness (Boskalis disputes that the tow was unseaworthy). The Court agrees with Boskalis. As discussed in the negligence analysis above, the language of the indemnity clause makes clear that Island Maritime was responsible for "any liability," "loss or damage of whatsoever nature, howsoever caused to arising from the sinking of the tug," and "loss or damage of whatsoever nature caused to or suffered by third parties or their property by reason of contact with the tug...." Agreement ¶ 18. The Court finds that such language is plain, unambiguous and broad enough to encompass even the historical duty of seaworthiness—the knock for knock provisions were clearly intended to allocate liability arising without regard to any cause.[5] The duty of seaworthiness that a tow owes a tug arises because "the owner of the tug is not an insurer of his tow." *Kenny Marine Towing, Inc. v. M/V John R. Rice,* 583 F.Supp. 1196, 1198 (E.D.La.1984); *see also, Cargill, Inc. v. C & P Towing Co., Inc.,* 1990 WL 270199 (E.D.Va.1990). Here, however, the pur-

---

5. The Court notes that the Supreme Court has referred to the duty of seaworthiness as "absolute" in a case dealing with the duty ship owners owe to longshoreman, *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 551, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), and the term "absolute liability" is frequently used when discussing seaworthiness. *See Kornberg v.*

*Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1335 (11th Cir.1984) (citing *Mitchell* ). As *A.L. Mechling* makes clear, however, such a duty can be waived with clear and unambiguous language, as the contract did here. *See A.L. Mechling Barge Lines, Inc.,* 258 F.Supp. at 211.

pose of the Agreement, as persuasively argued by Boskalis at the hearing, was precisely so that the Parties had absolute certainty as to their relative risks and responsibilities, and could insure themselves accordingly. Boskalis did not request that Island Maritime insure the tow, but instead that each party insure itself against clear risks laid out ahead of time in the contract. Such an allocation of risk was part of the bargain and thus part of the contract price.

Therefore, a breach of the implied or express warranty of seaworthiness would be covered under the indemnification provision. As previously noted, these parties are commercial entities that made a knowing decision as to how to allocate risks. Such an allocation included indemnification for "any liability," including seaworthiness, breach of contract and negligence. Boskalis was required to exercise due diligence in ensuring a seaworthy vessel. Boskalis argues they met this requirement through the certificate of seaworthiness, but even if they did not, Island Maritime would still be required to bear the liability. The Court concurs. The Agreement is clear that Island Maritime was responsible for all liability arising out of damage to or by the tug.

### D. Total Ventures' claim

█ Total Ventures' claim against either Boskalis or Island Maritime is not resolved by this Order. Total Ventures must proceed against Boskalis and/or Island Maritime in separate proceedings. In the event that Total Ventures succeeds in their claim against Boskalis, Total Ventures could collect from Boskalis (as Boskalis acknowledged at the hearing), but Island Maritime would be required to indemnify Boskalis for such claim paid to

Total Ventures arising from the sinking of the BETTY.

### FINAL JUDGMENT

For the reasons stated in the Court's March 13, 2012 Order Granting Limitation Plaintiffs'[1] Motion for Summary Judgment, it is hereby

**ORDERED AND ADJUDGED** that **FINAL JUDGMENT** is **ENTERED** in favor of Limitation Plaintiffs. Claimants Island Maritime and Edward Hansen shall take nothing by this action. The Court reserves jurisdiction over appropriate motions for attorney fees and costs. The Clerk of Court is directed to **CLOSE** this case for administrative purposes.

---

1. Limitation Plaintiffs consist of Boskalis Westminster International B.V., Boskalis Westminster St. Lucia, Ltd., and Boskalis Westminster Middle East, Ltd.