

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00062-CV

**TUTLE & TUTLE TRUCKING, INC.,**

                                                            **Appellant**

 **v.**

**EOG RESOURCES, INC.,**

                                                            **Appellee**

**From the 18th District Court
Johnson County, Texas
Trial Court No. C2010-0679**

## O P I N I O N

In one issue, Appellant Tutle & Tutle Trucking, Inc. complains about a summary judgment granted in favor of Appellee EOG Resources, Inc. In its summary-judgment order, the trial court concluded that, based on language contained in a Master Services Contract (MSC) between Tutle and EOG, Tutle owes duties to defend and indemnify EOG and its contractor, Frac Source Services, Inc., in the underlying personal-injury lawsuit. We will affirm.

## I. BACKGROUND

This dispute arose after Archie Henderson, a Tutle employee, sued Tutle and Frac Source to recover damages for injuries that he allegedly sustained on the job.[1] Henderson alleged:

> On or about September 5, 2007, Plaintiff ARCHIE HENDERSON, an employee of Defendant TUTLE & TUTLE, was, in the course and scope of his employment, assisting FRAC SOURCE personal [sic] unloading sand from a FRAC SOURCE "Sand King" to a truck. The Sand King being used as [sic] the time of the incident was owned, operated, and controlled by Defendant FRAC SOURCE. As Plaintiff was assisting with unloading sand from the Sand King and as FRAC SOURCE personnel operated the Sand King, Plaintiff HENDERSON was struck by a falling conveyor that was part of the Sand King. This incident caused Plaintiff HENDERSON to suffer severe and permanent head, shoulder, and back injuries. Upon information and belief, Defendant FRAC SOURCE had modified or removed a safety device from the Sand King, thus rendering the equipment unreasonably dangerous. In addition, Defendant FRAC SOURCE employees failed to properly utilize the Sand King conveyor's secondary safety system.

After learning that it was sued in the *Henderson* suit, Frac Source made a demand on EOG to defend and indemnify it under a separate master service contract between EOG and Frac Source. EOG then made a demand on Tutle for defense and indemnity in the *Henderson* suit, even though Henderson did not sue EOG.

In asserting that Tutle has a duty to defend and indemnify it, EOG relied on several provisions contained in the MSC. Those relevant provisions are:

> 6A. CONTRACTOR [Tutle] AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD COMPANY [EOG], ITS PARENT, SUBSIDIARY AND AFFILIATED COMPANIES AND ITS AND THEIR CO-LESSEES, PARTNERS, JOINT VENTURERS, CO-OWNERS, AGENTS,

---

[1] In its summary-judgment motion, Tutle acknowledged that Henderson works for Tutle and that the injuries were suffered while working on the project as an employee for Tutle, though the project was supervised by EOG.

OFFICERS, DIRECTORS AND EMPLOYEES (HEREINAFTER COLLECTIVELY REFERRED TO AS "COMPANY GROUP") HARMLESS FROM AND AGAINST ALL DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING COSTS OF LITIGATION, ATTORNEYS' FEES AND REASONABLE EXPENSES IN CONNECTION THEREWITH, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY OR THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL OR CRAFT, OR THE NEGLIGENCE OF ANY PARTY, INCLUDING BUT NOT LIMITED TO THE SOLE OR CONCURRENT NEGLIGENCE OF THE COMPANY GROUP, ARISING IN CONNECTION HEREWITH IN FAVOR OF CONTRACTOR'S AGENTS, INVITEES AND EMPLOYEES, AND CONTRACTOR'S SUBCONTRACTORS AND THEIR AGENTS, INVITEES AND EMPLOYEES ON ACCOUNT OF DAMAGE TO THEIR PROPERTY OR ON ACCOUNT OF BODILY INJURY OR DEATH.

6B. COMPANY AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD CONTRACTOR, ITS AGENTS, OFFICERS, DIRECTORS AND EMPLOYEES (HEREINAFTER COLLECTIVELY REFERRED TO AS "CONTRACTOR GROUP") HARMLESS FROM AND AGAINST ALL DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING COSTS OF LITIGATION, ATTORNEYS' FEES AND REASONABLE EXPENSES IN CONNECTION THEREWITH, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY OR THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL OR CRAFT, OR THE NELIGENCE OF ANY PARTY, INCLUDING BUT NOT LIMITED TO THE SOLE OR CONCURRENT NEGLIGENCE OF THE CONTRACTOR GROUP, ARISING IN CONNECTION HEREWITH IN FAVOR OF COMPANY'S AGENTS, INVITEES AND EMPLOYEES, COMPANY'S CONTRACTORS (OTHER THAN CONTRACTOR) AND THEIR AGENTS, INVITEES AND EMPLOYEES, AND SUCH CONTRACTORS' SUBCONTRACTORS, OR THEIR AGENTS, INVITEES OR EMPLOYEES ON ACCOUNT OF DAMAGE TO THEIR PROPERTY OR ON ACCOUNT OF BODILY INJURY OR DEATH.

The language contained in paragraphs 6A and 6B of the MSC between EOG and

Tutle is set forth in all capital letters and in an apparently slightly larger font than the

rest of the contract. Another relevant provision of the MSC—paragraph 6E—was not capitalized or differentiated using an apparently larger font. Paragraph 6E provides:

> 6E. The terms and provisions of this Paragraph 6 shall have no application to claims or causes of action asserted against Company or Contractor by reason of any agreement of indemnity with a person or entity not a party to this Agreement in those instances where such contractual indemnities are not related to or ancillary to the performance of the work contemplated under the Agreement or are indemnities uncommon to the industry. The terms and provisions of this Paragraph 6 shall expressly apply to claims or causes of action asserted against Company or Contractor by reason of any agreement of indemnity with a person or entity not a party to this Contract where such contractual indemnities are related to or ancillary to the performance of the work contemplated under the Agreement and or Company's project and are indemnities not uncommon in the industry.

When demanding that Tutle defend and indemnify it in the *Henderson* suit, EOG relied on paragraphs 6A and 6E of the MSC.

After receiving EOG's demands for defense and indemnity, Tutle filed a declaratory-judgment action against EOG, Frac Source, and Tutle's insurer, Carolina Casualty Company, seeking a declaration that Tutle owed no defense or indemnity obligation to EOG in the *Henderson* suit. In the alternative, Tutle sought a declaration that Tutle's insurance policy with Carolina covered any indemnity obligation that Tutle owed to EOG as an "insured contract." EOG counterclaimed for a declaratory judgment that it was entitled to defense and indemnity from Tutle in the *Henderson* suit based on the MSC and because Henderson was an employee of Tutle who was furnishing services to EOG at the time of the accident. EOG also made a demand upon Tutle for indemnity that EOG owes to Frac Source under the "pass through" provision (paragraph 6E) of the MSC. In addition, EOG sought a declaration that Carolina owed a

duty to EOG as its primary liability policy as a matter of law.

EOG moved for partial summary judgment, arguing that: (1) Tutle breached its contract with EOG; (2) Carolina had a contractual obligation to provide a defense and indemnity to EOG and Frac Source with regard to the claims asserted in the *Henderson* suit; (3) Tutle had a contractual obligation to provide a defense and indemnify EOG and Frac Source with regard to the claims asserted in the *Henderson* suit; and (4) Tutle and/or Carolina have a contractual obligation "to pay all costs, expenses, and reasonable attorney's fees incurred by or on behalf of EOG/Frac Source in the defense of the Underlying Lawsuit from at least April 2, 2008 through the present date and for all such future costs, expenses, and attorney's fees."

Tutle filed its own motion for summary judgment, asserting that, as a matter of law, it owed no contractual duty to defend or indemnify Frac Source under the MSC because the applicable provisions did not satisfy Texas law's "fair-notice" requirements—the express-negligence test and conspicuousness. Tutle also contended that it did not owe a duty to defend or indemnify EOG under the MSC for obligations that EOG owed to Frac Source in the *Henderson* suit.

The trial court denied Tutle's motion and granted EOG's motion. In granting EOG's motion, the trial court specifically declared that Tutle: (1) breached the MSC it had with EOG; (2) has a contractual duty to defend and to indemnify EOG and Frac Source in the underlying *Henderson* suit; and (3) owes EOG reimbursement for all defense costs, expenses, and indemnity incurred in the *Henderson* suit. Thereafter, the trial court granted EOG's motion to sever all claims brought against EOG into a

separate cause number, and this appeal followed.

## II.    STANDARD OF REVIEW

We review the grant or denial of a traditional motion for summary judgment de novo. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005). To be entitled to summary judgment, the movant must demonstrate that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Tex. Workers' Compensation Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

## III.    THE FAIR-NOTICE DOCTRINE

In its sole issue, Tutle contends that the trial court erred in granting summary judgment in favor of EOG because the provisions in the MSC that EOG relies on do not meet the fair-notice requirements established by the Texas Supreme Court for interpreting the validity and enforceability of a contractual-indemnity obligation. And, because the MSC provisions allegedly do not meet the fair-notice requirements, Tutle asserts that the trial court erred in concluding that Tutle breached the contract and owes EOG and Frac Source duties to defend and indemnify them in the underlying *Henderson* suit. EOG counters that the provisions meet the fair-notice requirements and that Tutle judicially admitted that they did in the trial court.

Indemnity provisions are valid and enforceable if they satisfy two fair-notice requirements. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993); *see Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2003). One fair-notice requirement, the express-negligence doctrine, requires that the intent of the parties be specifically stated within the four corners of the document. *Reyes*, 134 S.W.3d at 192; *see Dresser*, 853 S.W.2d at 508 (noting that, under express-negligence doctrine, a party's intent to be released from all liability caused by its own future negligence must be expressed in unambiguous terms within contract's four corners).

The other requirement, conspicuousness, requires that something appear on the face of the contract to attract the attention of the person looking at it. *Reyes*, 134 S.W.3d at 192. Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself. *Id.* The purpose of the conspicuousness requirement is to protect the buyer from surprise and an unknowing waiver of his or her rights. *Littlefield v. Schaefer*, 955 S.W.2d 272, 275 (Tex. 1997). Whether an agreement meets the conspicuousness requirement is a question of law. *Dresser*, 853 S.W.2d at 509.

Indemnity agreements are construed under the normal rules of contract construction. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). The primary goal is to determine the parties' intent. *Id.*

A.     **Conspicuousness**

On appeal, Tutle complains that paragraph 6—the section of the MSC at issue in this case—is not conspicuous as a matter of law. To analyze this complaint, we must

examine the entire MSC. It provides that Tutle was a contractor on EOG's project. Paragraphs 6A and 6B, as shown above, outline the parties' duties to defend and indemnify "AGAINST ALL DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING COSTS OF LITIGATION, ATTORNEYS' FEES AND REASONABLE EXPENSES IN CONNECTION THEREWITH . . . ." Compared to the remainder of the MSC, the language in paragraphs 6A and 6B is capitalized and appears to be a larger font size. Paragraph 6, however, contains three additional sections that further clarify the indemnity provisions. In demanding that Tutle defend and indemnify EOG regarding Frac Source's alleged liability, EOG relies heavily on paragraph 6E. This paragraph is not capitalized, and the font size is similar to the remainder of the MSC, though the numbering for it—6E—and its location in the MSC indicate that its purpose is to clarify the duties outlined in paragraph 6. Tutle admits that paragraphs 6A and 6B are conspicuous, but it argues that paragraph 6E, the "pass through" provision, is not conspicuous.[2]

Although the Business and Commerce Code defines "conspicuous" to include language in which both the heading and text are in larger or contrasting type, it does not require both the heading and the text to be in larger or contrasting type. *See* TEX. BUS. & COMM. CODE ANN. § 1.201(10) (West 2009). Further, the Business and Commerce Code specifically provides that a contractual provision is "conspicuous" if it is written,

---

[2] EOG asserts that Tutle waived its conspicuousness argument with respect to paragraph 6E. We disagree. A review of Tutle's motion for summary judgment shows that Tutle argued that paragraph is inconspicuous because the font is not bolded, capitalized, or otherwise written in such a way "that would capture the attention of a reasonable person."

displayed, or presented in such a way that a reasonable person ought to have noticed it. *See id.* Case law echoes that statute. *See Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 509, 511; *see also Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 332-33 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

We conclude that paragraph 6E is sufficiently conspicuous to provide fair notice. The numbering for the "pass through" provision is capitalized and is different from other provisions in the MSC. And, perhaps more importantly, the location of paragraph 6E, being numerically linked to paragraphs 6A and 6B, is such that a reasonable person ought to have noticed it. Paragraph 6E is not buried within the contract or located away from paragraphs 6A and 6B, which establish the defense and indemnification duties. In fact, paragraph 6E is on the same page as the last couple of lines of paragraph 6B, which, as stated earlier, is written in all-capital letters and in apparently slightly larger font. It is not the case that the complained-of language appeared in small, light type on the back of a form and was surrounded by unrelated terms. *See, e.g., Dana Corp. v. Microtherm, Inc.*, No. 13-05-00281-CV, 2010 WL 196939, at *6-7 (Tex. App.—Corpus Christi Jan. 21, 2010, pet. granted, judgm't vacated w.r.m.) (mem. op.) (concluding that liability-limiting provision was inconspicuous because statement on front of document, "REFER TO REVERSE SIDE FOR TERMS AND CONDITIONS OF SALE," does not suggest liability-limiting provision was on reverse side); *Am. Home Shield Corp. v. Lahorgue*, 201 S.W.3d 181, 185 (Tex. App.—Dallas 2006, pet. denied) (concluding that indemnity provision was not conspicuous because it appeared "on the back of the contract in a series of numbered, uniformly printed and

spaced paragraphs without headings or contrasting type"); *Safway Scaffold Co. v. Safway Steel Prod., Inc.*, 570 S.W.2d 225, 228 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) (determining that indemnity provisions were not conspicuous because they were located on back of document among series of numbered paragraphs without headings or contrasting type and not specifically identified as indemnity provisions on front of document); *see also Enserch Corp. v. Parker*, 794 S.W.2d 2, 9 (Tex. 1990) (concluding that indemnity provision was sufficiently conspicuous to afford fair notice of its existence when entire contract appeared on one page and language was on front side of contract, not hidden under separate heading or surrounded by unrelated terms). Accordingly, we reject Tutle's assertion that paragraphs 6A-6E do not satisfy the conspicuousness requirement.

## B.     The Express-Negligence Doctrine

Tutle also argues that paragraphs 6A and 6E fail to meet the express-negligence test and thus do not obligate Tutle to indemnify EOG for EOG's contractual obligation to indemnify Frac Source. Specifically, Tutle asserts that paragraph 6E "is vague, ambiguous, and if enforced, violates the express[-]negligence test where there is nothing within [p]aragraph 6E that indicates that Frac Source is seeking to be indemnified by Tutle from the consequences of its own negligence." EOG counters that the express-negligence doctrine does not apply when an indemnitee does not seek indemnity for its own negligence and that the "pass through" indemnity provision in paragraph 6E is neither vague nor ambiguous.

As stated earlier, the express-negligence test states that if a party intends to be released from its own future negligence, it must express that intent in clear, unambiguous terms within the four corners of the contract. *Reyes*, 134 S.W.3d at 192; *Sydlik*, 195 S.W.3d at 333. The purpose of "the express[-]negligence rule is to require scriveners to make it clear when the intent of the parties is to exculpate" a party for that party's own negligence. *Quintana v. Crossfit Dallas, L.L.C.*, 347 S.W.3d 445, 450 (Tex. App.—Dallas 2011, no pet.) (quoting *Atl. Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex. 1989)).

Several courts, however, have stated that the express-negligence doctrine does not apply when an indemnitee, such as EOG here, does not seek indemnity for its own negligence. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 889 (Tex. App.—Dallas 2007, no pet.) (citing *MAN GHH Logistics GMBH v. Emscor, Inc.*, 858 S.W.2d 41, 43 (Tex. App.—Houston [14th Dist.] 1993, no writ)); *Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 669 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).[3] In this case, EOG seeks indemnity from Tutle for Frac Source's alleged

---

[3] In *Transcontinental Gas Pipeline Corp. v. Texaco, Inc.*, the First Court of Appeals noted the following with respect to the express-negligence doctrine:

> Transco asks this Court to expand the express[-]negligence doctrine to cover *any* indemnity provision that is ambiguous, despite the obvious refusal of our sister courts to expand the doctrine. The Texas Supreme Court declined to extend the express[-]negligence doctrine to an insurance-shifting provision. *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 806 (Tex. 1992). More recently, the Texas Supreme Court held that the express-negligence doctrine applies to releases that relieve a party of its own negligence, but the court expressly limited its holding. *Dresser Indust., Inc.*, 853 S.W.2d at 509. "It is important to note that our discussion … is limited solely to those types of releases which relieve a party in advance of liability for its own negligence." *Id.* at 507. Furthermore, it is not extraordinary or unjust to shift the risk of economic damages resulting from a breach of contract, particularly when both parties are experienced

negligence. Thus, EOG argues that the express-negligence doctrine does not apply in this case.

Tutle responds that paragraph 6E constitutes an extraordinary transfer of risk to which the express-negligence doctrine applies. *See, e.g., Reyes*, 134 S.W.3d at 193; *Green Int'l v. Solis*, 951 S.W.2d 384, 386 (Tex. 1997) ("We held that such extraordinary risk-shifting clauses must meet certain fair notice requirements."). Both parties acknowledge that there is scant Texas case law addressing the fair-notice requirements as it relates to a "pass through" provision such as the one in this case. Nevertheless, assuming that Tutle is correct, we do not believe that the language of the provision is vague and ambiguous as to violate the express-negligence doctrine.

In arguing that paragraph 6E is neither vague nor ambiguous, EOG relies heavily on *EOG Resources, Inc. v. Badlands Power Fuels, L.L.C.*, 677 F. Supp. 2d 1143 (D. N.D. 2009). In this case, the North Dakota federal district court analyzed a "pass through" identical to the one in this case. *Id.* at 1146. Also, the facts in *Badland Power Fuels* are substantially similar.

EOG, the owner and operator of the Zacher Oil Well in Mountrail County, North Dakota, entered into identical master service contracts with its contractors, Petroleum Experience, B.O.S. Roustabout & Backhoe Service, Inc., and Badlands Power Fuels. *Id.* at 1145. The federal court included the relevant language of the master service contracts in its opinion, and the contracts are virtually identical to the MSC in this case. *Id.* at

---

contractors and familiar with industry customs regarding risk shifting. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997).

35 S.W.3d 658, 669 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (internal footnotes omitted).

1145-46. EOG's contractors were performing a flow-back operation on the Zacher Oil Well. *Id.* at 1145. During this operation, a fire occurred and injured Badlands Power Fuels employee Ted Seidler and employees of another contractor. *Id.* Seidler sued, and Petroleum Experience and B.O.S. tendered their defenses and requested indemnification from EOG. *Id.* at 1146-47. Similar to the case at hand, EOG tendered its defense and request for indemnification to Badlands Power Fuels, the employer of the injured employee, arguing that the "pass through" provision in the master service contract (also paragraph 6E) required that Badlands Power Fuels defend and indemnify EOG in the *Seidler* suit. *Id.* After applying Texas law, the federal court granted EOG's summary-judgment motion and held that "Badlands Power Fuels must also defend and indemnify EOG under paragraph 6E of its master service contract from claims that Petroleum Experience and BOS have made against EOG for the claims that Ted Seidler has made against them."[4] *Id.* at 1155.

Thus, at least one court has approved the "pass through" provision at issue. *See id.* Furthermore, we do not believe that the "pass through" indemnity provision of the MSC was required to have the specificity that Tutle suggests or else run the risk of being deemed vague and ambiguous. Tutle and EOG, both sophisticated business entities, entered into a contract in which Tutle agreed to defend and indemnify EOG under paragraph 6E, which required the duties of defense and indemnification with

---

[4] We recognize that the federal court in *Badlands Power Fuels* did not analyze the "pass through" provision under the Texas fair-notice doctrine, but we are persuaded by the fact that the federal court, by granting summary judgment in favor of EOG and concluding that Badlands Power Fuels has a duty to defend and indemnify EOG under the "pass through" provision, implicitly concluded that the "pass through" provision was not vague or ambiguous. *See* 677 F. Supp. 2d at 1155. Furthermore, the federal court's ruling indicates that such a "pass through" provision is not uncommon in the oil and gas industry. *See id.*

regard to non-parties to the MSC for claims or causes of action "related to or ancillary to the performance of the work contemplated under the Agreement and[/]or Company's project and are indemnities not uncommon in the industry." We conclude that the language of paragraph 6E is neither vague nor ambiguous.

As a final argument, Tutle asserts that EOG did not tender sufficient evidence demonstrating that the MSC is applicable to the facts of the *Henderson* suit. In particular, Tutle contends that the record contains no evidence indicating that Henderson was injured while "transporting dry bulk commodity," as stated in the MSC. For several reasons, we disagree with Tutle's interpretation.

First, the MSC states in paragraph 1:

> This Agreement shall control and govern all work performed by Contractor for the Company, under subsequent verbal and/or regular work orders, and any agreements or stipulations in any such work order, delivery ticket, or other instrument used by Contractor not in conformity with the terms and provisions hereof shall be null and void.

Tutle judicially admitted in its summary-judgment motion that Henderson was injured while working for Tutle on EOG's project.

Second, in making its argument that the MSC does not apply to Henderson's injuries, Tutle relies on the recital in the MSC stating that Tutle is in the business of "transporting dry bulk commodity." Texas courts have held that recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous. *See City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex. App.—Fort Worth 2008, pet. dism'd); *see also Beckham Res., Inc. v. Mantle Res., L.L.C.*, No. 13-09-00083-CV, 2010 WL 672880, at *9 (Tex. App.—Corpus Christi Feb. 25, 2010, pet. denied) (mem. op.).

Paragraph 1 is an operative clause describing the extent of the agreement, while the provision relied upon by Tutle merely describes Tutle's business and its intent to work as an independent contractor for EOG from time to time. *See, e.g., Enter. Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) ("Although we recognize that in certain cases, courts may consider the title of a contract provision or section to interpret a contract, 'the greater weight must be given to the operative contractual clauses of the agreement.'") (quoting *Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 600 (1959). Based on the record, we conclude that Henderson's injuries are within the scope of the MSC.

Based on the foregoing, we conclude that the trial court did not err in declaring that the MSC covers the injuries sustained by Henderson. Furthermore, we hold that the MSC satisfies the fair-notice doctrine. The trial court did not err in granting EOG's summary-judgment motion. Accordingly, we overrule Tutle's sole issue and affirm the judgment of the trial court.


REX D. DAVIS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray dissenting)
Affirmed
Opinion delivered and filed November 15, 2012
[CV06]