

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00166-CV

NABORS DRILLING USA, L.P.          APPELLANT

V.

ENCANA OIL & GAS (USA) INC.          APPELLEE

----------

## FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Nabors Drilling USA, L.P. appeals the trial court's summary judgment in favor of appellee, Encana Oil & Gas (USA) Inc. We reverse and render.

## Background Facts

In 2005 and 2008, Encana contracted with Nabors to have Nabors provide drilling activities on two of Encana's oil and gas properties. The contracts,

---

[1]*See* Tex. R. App. P. 47.4.

entitled "Daywork Drilling Contract," have a disclaimer at the top on the first page that states, "This Daywork Drilling Contract is similar in style to the IADC Drilling Bid Proposal and Daywork Drilling Contract-U.S.  However, this contract is significantly different from the IADC version with respect to many important provisions related to indemnity, insurance coverage, liability[,] and risk."  The two contracts have identical language regarding indemnity.  The sections relevant to the issues here state,

> 14.8.  [Nabors]'s Indemnification of [Encana]:  [Nabors] shall release [Encana] of any liability for, and shall protect, defend[,] and indemnify [Encana], its officers, directors, employees[,] and joint owners from and against all claims, demands, liabilities, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of [Nabors]'s employees or [Nabors]'s subcontractors or their employees, or [Nabors]'s invitees, on account of bodily injury, death[,] or damage to property[.]
>
> . . . .
>
> 14.9.  [Encana]'s Indemnification of [Nabors]:  [Encana] shall release [Nabors] of any liability for, and shall protect, defend[,] and indemnify [Nabors], its officers, directors, employees[,] and joint owners from and against all claims, demands, liabilities, and causes of action of every kind and character, without limit and without regard to the cause or causes therefor or the negligence of any party or parties, arising in connection herewith in favor of [Encana]'s employees or [Encana]'s contractors or their employees, or [Encana]'s invitees, other than those parties identified in Subparagraph 14.8 on account of bodily injury, death[,] or damage to property.
>
> . . . .
>
> 14.13.  Indemnity Obligation:  Except as otherwise expressly limited herein, it is the intent of the parties hereto that all releases,

2

indemnity obligations[,] and/or liabilities assumed by such parties under the terms of this Contract, including, without limitation, Subparagraphs 14.1 through 14.12 hereof, be without limit and without regard to the cause or causes thereof, including preexisting conditions, strict liability, regulatory or statutory liability, breach of warranty (express or implied), any theory of tort, breach of contract[,] or the negligence of any party or parties, whether such negligence be gross, sole, joint or concurrent, active or passive.

The daywork contracts also require that Nabors purchase insurance "insuring the liabilities specifically assumed by [Nabors] in Paragraph 14 of this Contract" and that Encana purchase "insurance coverage of similar kind and in a similar amount as is required of [Nabors], insuring the liabilities specifically assumed by [Encana] in Paragraph 14 of this Contract."

In 2007, a Nabors employee named Tyler Newsome was injured on an Encana worksite. Newsome sued Encana and its subcontractor, Weatherford International, Inc. In 2008, another Nabors employee, Larry Mullins, was injured on another Encana worksite. Mullins sued Encana and its subcontractor, Fowler Transportation, Ltd. Encana had contracts with the two subcontractors entitled "Master Service Contract" and "Master Service Agreement." Both contracts contained indemnity provisions that required Encana to indemnify the subcontractors for claims "arising out of bodily injury . . . or loss or destruction of property . . . caused by, directly or indirectly resulting from, incident to, connected with[,] or arising out of the performance of the Work."

Encana requested that Nabors defend and indemnify it in the two lawsuits, pursuant to the daywork contracts. Nabors complied and obtained a dismissal of

3

all the claims against Encana in both cases. The two subcontractors settled with the injured workers and sought indemnity from Encana. Encana paid the subcontractors and demanded indemnity from Nabors for those payments. Nabors refused, claiming that the daywork contracts do not require Nabors to indemnify Encana against contractual indemnity claims from its subcontractors.

Encana sued Nabors for breach of contract and declaratory judgment. Both Encana and Nabors moved for partial summary judgment on Nabors's liability under the daywork contracts for the subcontractor's claims against Encana.[2] The trial court granted Encana's motion and denied Nabors's. The parties stipulated to the amount of damages if Encana's claim was affirmed on appeal, Encana nonsuited the claims it had not sought summary judgment on, and the trial court entered a final judgment reiterating its ruling on the motions for summary judgment and the amount of damages. Nabors then filed this appeal.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one essential element of a cause

---

[2]Encana also moved for summary judgment on Nabors's responsibility to Encana under the contracts for reimbursement of Encana's pre-tender attorneys' fees and expenses.

of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

## Discussion

Both of Nabors's issues on appeal concern whether the trial court properly construed the indemnity provisions in the daywork contracts to include liability for "pass-through" indemnity claims. That is, whether under the language of the contract, Nabors was required to indemnify Encana for Encana's separate contractual responsibility to indemnify its subcontractors. In its second issue, Nabors argues that the rules of construction preclude Encana's interpretation of the contract.

Indemnity agreements are construed under the normal rules of contract construction. *See Associated Indem. Corp. v. Cat Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

5

Courts should examine the entire writing "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id.* "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). We must look at all of the contract's parts together and be "particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

Nabors's duty under paragraph 14.8 of the daywork contracts is to "release [Encana] of any liability for, and [to] protect, defend[,] and indemnify [Encana]." The Nabors employees' claims against Encana were covered by paragraph 14.8 because they were asserted against Encana. The Nabors employees' claims against Encana's subcontractors, however, were not asserted against Encana. It was the subcontractors themselves who asserted claims against Encana. For those claims (that is, the claims of the subcontractors against Encana) to be

6

covered under paragraph 14.8, they must have arisen "in connection" with the daywork contract and have been "in favor of" a Nabors's employee "on account of bodily injury, death[,] or damage to property." The subcontractors' claims against Encana did not arise in connection with the daywork contracts but with the master service agreements. Neither is a contractual indemnity claim a claim "on account of bodily injury, death[,] or damage to property." *See Foreman v. Exxon Corp.*, 770 F.2d 490, 497 (5th Cir. 1985) ("Exxon's argument that the language of the indemnity provision unambiguously provides that Offshore must reimburse Exxon for Exxon's contractual liability to Diamond M ignores the limiting language 'for injury to or death or illness of persons.'"); *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981);[3] *see also Scherff v. Missouri-Kansas-Texas R. Co.*, 449 F.2d 23, 30 (5th Cir. 1971) (noting that indemnity agreement did not intend "that Shamrock would indemnify Northern for any liability that might arise out of a contract entered into between Northern and other parties").[4]

---

[3]In *Corbitt*, the Fifth Circuit, applying maritime law, held that claims based on a separate indemnity contract between the owner and a subcontractor were not claims "on account of personal injury," but were "on account of" the indemnity agreement between the owner and subcontractor. 654 F.2d at 333. Thus, the indemnity agreement between the owner and contractor, which provided indemnity for claims "on account of personal injury . . . arising out of or in connection with performance of" the contract, did not require the contractor to indemnify the owner for the owner's contractual liability to the subcontractor. *Id.*

[4]The indemnity provision at issue in *Sherff* stated, in part,

7

Encana argues that these claims were "in favor of" Nabors's employees because Encana paid its subcontractors' claims directly to the Nabors employees. However, if the details of the payment process were sufficient to determine whether a claim fell under an indemnity provision, then Encana could unilaterally decide which claims would be indemnified post hoc and without notice to Nabors. *See Win-Tex Drilling Co. v. Star Prod. Inc.*, No. 11-99-00067-CV, 2000 WL 34234887, at *2 (Tex. App.—Eastland Aug. 3, 2000, no pet.) (not designated for publication) (holding that indemnity provision requiring operator to indemnify contractor for claims "in favor of [operator]'s employees or [operator]'s contractors or their employees or [operator]'s invitees" did not include claims by an employee of the operator's contractor's subcontractor). Encana also argues that paragraph 14.13 clarifies the duties imposed upon Nabors in paragraph 14.8. Paragraph 14.13 states that the parties' intent is that the liabilities

---

Contractor shall . . . indemnify, protect[,] and save Northern, its directors, officers[,] and employees harmless from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage, injury, cost[,] or expense of whatever kind or nature, including costs of litigation, attorney fees[,] and reasonable expenses in connection therewith, brought or presented by any person, firm, or corporation whatsoever, (including but not limited to, third parties, employees of Northern, employees of Contractor or of any subcontractor, and their dependents and person representatives) for injuries to or the death of any person, or damage to or loss of property alleged or claimed to have been caused by, or to have arisen out of or in connection with, or to be incidental to any of the work.

449 F.2d at 25–26.

8

assumed under the daywork contract "be without limit and without regard to the cause or causes thereof, including . . . breach of contract." Encana claims that the inclusion of "breach of contract" indicates the parties' intent that "contractual liability" is included in the duties of 14.8. But neither the subcontractor nor Encana were sued for breach of contract, and Encana did not seek indemnity from Nabors for a breach of contract claim. Encana sought indemnity for a claim based on another indemnity contract.

Encana points to paragraph 13 of the daywork contracts, which requires the parties to purchase and maintain insurance "insuring the liabilities specifically assumed" in paragraph 14. Paragraph 13 does nothing to add clarification or bolster Encana's argument. The only liability *specifically* assumed in paragraph 14 relevant to this case is Nabors's duty to indemnify Encana, its officers, directors, employees, and joint owners from claims by Nabors's employees for bodily injury, death, or damage to property. There is no specific reference to claims against Encana's subcontractors. *See Tutle & Tutle Trucking, Inc. v. EOG Res., Inc.*, 391 S.W.3d 240, 244 (Tex. App.—Waco 2012, no pet.) (upholding a pass-through liability claim when the contract stated that the indemnity provisions "expressly appl[ied] to claims or causes of action asserted against Company or Contractor by reason of any agreement of indemnity with a person or entity not a party to [the] Contract").

Further, the exhibit attached to the daywork contracts that further details the insurance requirement states that the parties were required to get

9

comprehensive commercial general liability insurance "including contractual obligations as respects this Contract and proper coverage for all other obligations assumed in this Contract." The exhibit sets the insurance limit at $1,000,000 "combined single limit per occurrence for Bodily Injury and Property Damage." In the Mullins litigation, the subcontractor's settlement with the employee was over $2,000,000. Encana's liability was capped at $2,000,000 under the master service agreement it had with the subcontractor. *See* Tex. Civ. Prac. & Rem. Code Ann. § 127.005(b) (West 2011) (limiting a party's indemnity obligation to the coverage and dollar limit of the insurance agreed to). A negotiated insurance limit of $1,000,000 does not indicate an intent that Nabors cover both Encana's claims and the claims of its subcontractors.

While we are mindful of the policy that, at drilling sites, employers are generally responsible for their own employees, *see Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 168 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("In the standard drilling contract, [indemnity provisions] allocate costs and liability according to who hired the injured party, not who caused the accident."), we cannot expand the contractual language beyond the contract's express language, *see Ideal Lease Serv. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983) ("We are precluded from expanding the scope of this coverage beyond that stated in the contract based solely upon what this Court may perceive to be the improperly expressed intentions of the parties."); *Chesapeake Operating*, 94 S.W.3d at 168 (noting that indemnity provisions

10

"often fall short" of their intended purpose).  A plain reading of the contracts does not conclusively reveal an intention by the parties that extra-contractual liabilities obligations may be passed through under the liability agreement of the daywork contracts.  *See* William W. Pugh, *A Strategic Look at the Bigger Picture—Risk Allocation in Oil and Gas Operational Agreements*, 45 Rocky Mtn. Min. L. Found. J. 349, 353 (2008) (hereinafter *Strategic Look*) (noting that pass-through indemnity is not available "[a]bsent express language" and warning that "every drilling contract with a broad reciprocal indemnity puts the operator at risk for all claims by its other contractors or their employees and the operator is stuck with that liability unless the contract has a pass-through provision").[5]

Because Encana did not conclusively prove an essential element of its claim—namely, that its subcontractors claims for which it was contractually liable fell under the indemnity provision of its contract with Nabors—it was not entitled

---

[5]Both Nabors and Encana agree that there are different ways in which to obtain pass-through protection.  As Pugh explains,

> One method is to require indemnity protection for any contractual liability to third parties. . . .  Another method that is similar is to specify that the indemnity obligation is owed to the indemnitee and anyone to whom the indemnitee owes contractual indemnity. . . . A third method of obtaining pass-through protection is to expand the categories of persons or companies entitled to indemnity protection such that the indemnitor agrees to indemnify the indemnitee "and its contractors and subcontractors (excluding Contractor and its subcontractors)."

*Strategic Look*, supra, at 354.  All three options make clear that the operator is seeking pass-through protection.  In the daywork contracts at issue, no such explicit language is used.

to summary judgment. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd.*, 710 S.W.2d at 60. The trial court erred by granting Encana's motion for summary judgment, and we sustain Nabors's second issue. Because we sustain its second issue, we do not need to address Nabors's first issue.[6] *See* Tex. R. App. P. 47.1.

Having held that Encana was not entitled to summary judgment, we look to Nabors's evidence and determine whether it was entitled to summary judgment. *See Mann Frankfort*, 289 S.W.3d at 848. When, as here, the provisions at issue are not ambiguous and can be given a definite legal interpretation, we construe the contract as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Because the plain language of the contract does not require Nabors to indemnify Encana for claims against Encana's subcontractors, Nabors has conclusively negated Encana's claims against it. Nabors is therefore entitled to summary judgment. *See Frost Nat'l Bank*, 315 S.W.3d at 508.

## Conclusion

Having sustained Nabors's dispositive issue, we reverse the trial court's judgment as to Nabors's liability to Encana for claims against Encana's subcontractors and render judgment dismissing those claims against Nabors with

---

[6]Encana requests in its brief that we reverse the trial court's order denying its objections to parol evidence submitted by Nabors "regarding extraneous agreements, prior negotiations, and Nabors'[s] alleged 'understanding' regarding the scope of the indemnity provisions." Because we base our holding on a plain reading of the unambiguous contract language, we do not need to address Encana's objections. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex. 1981) (noting that the court considers parol evidence only after determining that the contract is ambiguous).

prejudice.  *Mann Frankfort*, 289 S.W.3d at 848 (stating that the reviewing court should render the judgment the trial court should have rendered).  Because Nabors did not appeal that part of the trial court's judgment regarding Encana's pre-tender attorneys' fees and expenses, we remand the remainder of the case to the trial court to determine damages and attorneys' fees arising from those claims.


                                         LEE GABRIEL
                                         JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DELIVERED: July 11, 2013